**UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF OHIO
WESTERN DIVISION**

| | |
|---|---|
| DONALD LYNCH, | Case No. 1:15-cv-793 |
| Plaintiff, | Barrett, J. |
| | Bowman, M.J. |
| v. | |
| COMMISSIONER OF SOCIAL SECURITY, | |
| Defendant. | |

**REPORT AND RECOMMENDATION**

Plaintiff Donald Lynch filed this Social Security appeal in order to challenge the Defendant's findings that he is not disabled. *See* 42 U.S.C. §405(g). Proceeding through counsel, Plaintiff presents four claim of error, all of which the Defendant disputes. For the reasons explained below, I conclude that the ALJ's finding of non-disability should be AFFIRMED, because it is supported by substantial evidence in the administrative record.

**I.      Summary of Administrative Record**

On July 27, 2012, Plaintiff filed application for Disability Insurance Benefits (DIB) alleging a disability onset date of June 1, 2010, due to mental and physical impairments. (Tr. 185, 189). After Plaintiff's claims were denied initially and upon reconsideration, he requested a hearing *de novo* before an Administrative Law Judge. ("ALJ"). On March 25, 2014, ALJ Ena Weathers held an evidentiary hearing at which Plaintiff appeared with counsel. The ALJ heard testimony from Plaintiff, Plaintiff's therapist and an impartial vocational expert. On June 10, 2014, the ALJ denied Plaintiff's application in a

written decision. (Tr. 33-45). Plaintiff now seeks judicial review of the denial of his application for benefits.

Plaintiff was born in 1963 and was 46 years old on his alleged onset date. (Tr. 43). He dropped out of high school at age 16 and past relevant work as an excavator, laborer, and boiler rebuilder. (Tr. 82). Plaintiff fell in 1989 while working in excavation, injuring his right heel. (Tr. 288). He alleges disability due to chronic low back and foot pain, as well as anxiety and depression.

Based upon the record and testimony presented at the hearing, the ALJ found that Plaintiff had the following severe impairments: "chronic low back pain without radiculopathy; degenerative disc disease with osteoarthrosis; scoliosis; peripheral neuropathy; cervical radiculopathy; chronic foot pain status post right subtalar fusion; major depression; and anxiety disorder not otherwise specified (NOS)." (Tr. 36). The ALJ concluded that none of Plaintiff's impairments alone or in combination met or medically equaled a listed impairment in 20 C.F.R. Part 404, Subp. P, Appendix 1. The ALJ determined that Plaintiff retains the following residual functional capacity ("RFC") to perform light work with the following limitations:

> He is unable to climb ladders, ropes, or scaffolds; can occasionally stoop, crouch, and climb ramps or stairs; and can occasionally push and pull with the right lower extremity. He must avoid even moderate exposure to hazards, including commercial driving, walking on uneven surfaces, and work at unprotected heights. He can occasionally perform overhead reaching bilaterally; and can perform frequent fine fingering bilaterally. He must be allowed to change from standing to seated position or vice versa for 1-2 minutes every 1-2 hours without interference with work product. He is also limited to simple tasks without strict production demands.

(Tr. 37-38). Based upon the record as a whole including testimony from the vocational expert, and given Plaintiff's age, education, work experience, and RFC, the ALJ

concluded that while Plaintiff is unable to perform his past relevant work, significant other jobs exist in the national economy that Plaintiff could perform including such jobs as hand packer, small parts assembler, and cleaner/janitor. (Tr. 44). Accordingly, the ALJ determined that Plaintiff is not under disability, as defined in the Social Security Regulations, and is not entitled to DIB .*Id.*

The Appeals Council denied Plaintiff's request for review. Therefore, the ALJ's decision stands as the Defendant's final determination. On appeal to this Court, Plaintiff argues that the ALJ erred by: 1) failing to find that Plaintiff's impairments met the requirements for Listing 1.04(A); 2) finding that Plaintiff could perform light work; 3) improperly weighing the opinion evidence; and 4) improperly evaluating Plaintiff's credibility meet the improperly evaluating Plaintiff's mental impairments. Upon close analysis, I conclude that the ALJ's decision should be affirmed.

## II. Analysis

### A. Judicial Standard of Review

To be eligible for SSI or DIB a claimant must be under a "disability" within the definition of the Social Security Act. *See* 42 U.S.C. §§423(a), (d), 1382c(a). The definition of the term "disability" is essentially the same for both DIB and SSI. *See Bowen v. City of New York*, 476 U.S. 467, 469-70 (1986). Narrowed to its statutory meaning, a "disability" includes only physical or mental impairments that are both "medically determinable" and severe enough to prevent the applicant from (1) performing his or her past job and (2) engaging in "substantial gainful activity" that is available in the regional or national economies. *See Bowen*, 476 U.S. at 469-70 (1986).

When a court is asked to review the Commissioner's denial of benefits, the court's first inquiry is to determine whether the ALJ's non-disability finding is supported by substantial evidence. 42 U.S.C. § 405(g). Substantial evidence is "such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Richardson v. Perales*, 402 U.S. 389, 401 (1971) (additional citation and internal quotation omitted). In conducting this review, the court should consider the record as a whole. *Hephner v. Mathews*, 574 F.2d 359, 362 (6th Cir. 1978). If substantial evidence supports the ALJ's denial of benefits, then that finding must be affirmed, even if substantial evidence also exists in the record to support a finding of disability. *Felisky v. Bowen*, 35 F.3d 1027, 1035 (6th Cir. 1994). As the Sixth Circuit has explained:

> The Secretary's findings are not subject to reversal merely because substantial evidence exists in the record to support a different conclusion . . . . The substantial evidence standard presupposes that there is a 'zone of choice' within which the Secretary may proceed without interference from the courts. If the Secretary's decision is supported by substantial evidence, a reviewing court must affirm.

*Id.* (citations omitted).

In considering an application for disability benefits, the Social Security Agency is guided by the following sequential benefits analysis: at Step 1, the Commissioner asks if the claimant is still performing substantial gainful activity; at Step 2, the Commissioner determines if one or more of the claimant's impairments are "severe;" at Step 3, the Commissioner analyzes whether the claimant's impairments, singly or in combination, meet or equal a Listing in the Listing of Impairments; at Step 4, the Commissioner determines whether or not the claimant can still perform his or her past relevant work; and finally, at Step 5, if it is established that claimant can no longer perform his or her past relevant work, the burden of proof shifts to the agency to determine whether a

4

significant number of other jobs which the claimant can perform exist in the national economy. *See Combs v. Commissioner of Soc. Sec.*, 459 F.3d 640, 643 (6th Cir. 2006); 20 C.F.R. §§404.1520, 416.920.

A plaintiff bears the ultimate burden to prove by sufficient evidence that he or she is entitled to disability benefits. 20 C.F.R. § 404.1512(a). Thus, a plaintiff seeking benefits must present sufficient evidence to show that, during the relevant time period, he or she suffered an impairment, or combination of impairments, expected to last at least twelve months, that left him or her unable to perform any job in the national economy. 42 U.S.C. § 423(d)(1)(A).

**B. Specific Errors**

1. Listing 1.04(A)

Plaintiff argues first that the ALJ erred in failing to find that his impairments met the requirements of Listing 1.04(A). Plaintiff's contention lacks merit.

The third step in the sequential evaluation for disability benefits requires a determination of whether an impairment or a combination of impairments meets or equals one or more of the medical conditions listed in Appendix 1. *See* 20 C.F.R. §§ 416.920, 416.925, 416.926. An impairment meets a listed impairment only when it manifests the specific findings described in the set of medical criteria for that particular listed impairment. 20 C.F.R. § 416.925(d). Medical equivalence must be based on medical findings supported by medically acceptable clinical and laboratory techniques. 20 C.F.R. § 416.926(b). It is a claimant's burden at the third step of the evaluation process to provide evidence that she meets or equals a listed impairment. *Evans v. Sec'y of Health & Human Servs.,* 820 F.2d 161, 164 (6th Cir.1987).

If a claimant suffers from an impairment which meets or equals a listed impairment, the claimant is disabled without consideration of the claimant's age, education, and work experience. *See Kirk v. Sec'y of Health & Human Servs.,* 667 F.2d 524, 528 (6th Cir.1981). An impairment, or combination of impairments, will be deemed medically equivalent to a listed impairment if the symptoms, signs, and laboratory findings, as shown in the medical evidence, are at least equal in severity and duration as to the listed impairment. *Land v. Sec'y of Health & Human Servs.,* 814 F.2d 241, 245 (6th Cir.1986).

It is well-settled that to "meet" a listing, a claimant's impairments must satisfy each and every element of the listing. *Sullivan v. Zebley,* 493 U.S. 521, 531, 110 S.Ct. 885, 107 L.Ed.2d 967 (1990) ("For a claimant to show that his impairment matches a listing, it must meet all of the specified medical criteria. An impairment that manifests only some of those criteria, no matter how severely, does not qualify."); *Blanton v. Soc. Sec. Admin.,* 118 F. App'x 3, 6 (6th Cir.2004) ("When all the requirements for a listed impairment are not present, the Commissioner properly determines that the claimant does not meet the listing."). An ALJ must compare the available medical evidence with the requirements for listed impairments to determine whether a claimant's condition is equivalent to a listing. *Reynolds v. Comm'r of Soc. Sec.,* No. 09–2060, 2011 WL 1228165, at *2 (6th Cir. Apr.1, 2011).

Here, the ALJ determined that Plaintiff's impairments, singly or in combination, did not meet or equal any of the listed impairments in 20 CFR Part 404, Subpart P, Appendix 1. (Tr. 37). The ALJ's decision states that he considered whether Plaintiff

meets the requirements for Listings 1.02, Listing 1.04 and/or 1.06, but found that Plaintiff has not demonstrated findings that he met any of these listings. *Id.*

Plaintiff, however, asserts that the ALJ erred by failing to find that his impairments met or equaled Listing 1.04A. Listing 1.04 provides:

> Disorders of the spine ... resulting in compromise of a nerve root .... [w]ith [e]vidence of nerve root compression characterized by neuro-anatomic distribution of pain, limitation of motion of the spine, motor loss (atrophy with associated muscle weakness or muscle weakness) accompanied by sensory or reflex loss and, if there is involvement of the lower back, positive straight-leg raising test (sitting and supine).

*4 20 C.F.R. Pt. 404, Subpt. P, App'x 1, 1.04. Thus, for Plaintiff to have been found disabled at step three, he must have had (1) a spinal disorder that (2) result[ed] in "compromise of a nerve root" with (3) "neuro-anatomic distribution of pain," (4) "limitation of motion of the spine," and (5) motor loss (muscle weakness) accompanied by (6) sensory or reflex loss. *Id.*

Plaintiff argues that the evidence of record establishes that his cervical spondylosis meets or medically equals section 1.04(A). In support of this contention, Plaintiff cites to a December 30, 2009 MRI of his lumbar spine showing a neurocompression of the right L5 nerve root. (Tr. 39, 396). Plaintiff also asserts that treatment notes show insensory or reflex loss and a positive straight leg test. (Tr. 414, 443). Plaintiff further argues that the ALJ's minimal reasoning relating to Listing 1.04 fails as a matter of law.

Notably, citing *Reynolds v. Comm'r of Soc. Sec.*, 424 F. App'x 411 (6th Cir. 2011), Plaintiff asserts that the ALJ must evaluate whether the claimant's physical impairments met or equaled a Listing. *Id.* In *Reynolds*, the Sixth Circuit held that an ALJ

7

must compare medical evidence with the requirements for the listed impairments when considering whether the condition meets the Listing. *Id.* at 415.

However, as noted by the Commissioner, since *Reynolds*, the Sixth Circuit has declined to require remand whenever an ALJ provides minimal reasoning at step three. *See Forrest v. Comm'r of Soc. Sec.*, 591 F. App'x 359, 364–66 (6th Cir.2014); *see also Malone v. Comm'r of Soc. Sec.*, 507 F. App'x 470, 472 (6th Cir.2012) (per curiam) (rejecting argument that ALJ erred by not making specific findings at step three because the ALJ's conclusion was supported by substantial evidence in the record). In *Forrest,* the Sixth Circuit upheld the ALJ's conclusory finding at step three for two reasons: (1) the ALJ made sufficient factual findings elsewhere in his decision to support his conclusion at step three; and (2) even if the ALJ's factual findings failed to support his step-three findings, the error was harmless because the plaintiff had not shown his impairments met or medically equaled in severity any of the listed impairments. *Forrest*, 591 F. App'x at 366. Such is the case here.

As noted above the ALJ determined that imaging of Plaintiff's cervical and lumbar spine showed "mild" degenerative disc disease. In this regard, the ALJ found that while a December 30, 2009 MRI of Plaintiff's lumbar spine showed neurocompression of the right L5 nerve root (Tr. 39, 396), an August 2011 MRI of Plaintiff's cervical spine showed "mildly" degenerated cervical disc and spondylosis without high-grade spinal stenosis, as well as "mild" bilateral foraminal stenosis at C5-C6-7. (Tr. 39, 395). The ALJ further noted that additional x-rays of Plaintiff's lumbar spine, taken on December 17, 2012, showed "mild" upper lumbar spondylosis and dextroscoliosis. *Id.*

The undersigned recognizes that the 2009 MRI showed nerve root compression of the right L5 nerve root. (Pl. Br. at 3; Tr. 396). However, that MRI examination was performed prior to Plaintiff's alleged onset of disability date in June 2010 and prior to later MRI's that did not show nerve root compression. (Tr. 189, 396). Furthermore, Plaintiff cites to two pages of treatment notes in an attempt to show that he had sensory or reflex loss and a positive straight leg test. However, such notes are largely illegible and do not reveal any medical findings regarding sensory or reflex loss and they do not show whether the physicians' opinions reflect a positive or negative straight leg raise. (Tr. 414, 443).

In light of the foregoing, the undersigned finds that the ALJ's step-three finding is substantially supported.

*2. RFC Assessment*

Plaintiff next argues that the ALJ improperly determined that Plaintiff could perform light work. In finding that Plaintiff could perform light work, Plaintiff asserts that the ALJ improperly evaluated the opinion evidence.

Here, the record contains the following medical opinions:

Plaintiff's primary care physician, Dr. Desai, completed a physical assessment on April 17, 2014. (Tr. 388-92). He diagnosed Plaintiff with osteoarthritis, peripheral neuropathy, depression, cervical radiculopathy, sciatica, insomnia, headaches. (Tr. 388). He opined that Plaintiff was incapable of low stress jobs and that his pain was severe enough to affect his attention and concentration. (Tr. 389). He further opined that Plaintiff could walk three city blocks due to pain and could sit for two hours at a time (Tr. 390). He stated that Plaintiff could stand for 30 minutes at a time. Id. He also explained

that Plaintiff could sit for about two hours and stand/walk less than two hours. (Tr. 390). Dr. Desai opined that Plaintiff would need to shift positions at will and would need unscheduled breaks during an eight-hour workday. (Tr. 390). Dr. Desai also opined that Plaintiff should avoid high stress jobs, temperature extremes, and he needed to wear protective devices against fumes, gases, and humidity. (Tr. 392). Dr. Desai suggested that Plaintiff could be employable in a low stress, part-time environment, such as a desk job, parking lot attendant, or a secretarial position. *Id.* Finally, Dr. Desai believed that Plaintiff would be absent more than four days per month. *Id.*

Consultative examiner Dr. Phillip Swedberg performed an evaluation of Plaintiff on April 24, 2012. (Tr. 284-90). Dr. Swedberg noted that Plaintiff's chief complaint was right foot pain and he also complained of chronic low back pain over the past two years without known injury. Id. Dr. Swedberg found that Plaintiff had decreased range of motion of the lumbosacral spine and was unable to squat or walk heel to toe. (Tr. 290). He determined that Plaintiff had bony enlargement and decreased range of motion of his right ankle as well as pain to palpation on the underside of his heel. *Id.* X-rays of Plaintiff's spine showed evidence of scoliosis and degenerative changes. (Tr. 291). Dr. Swedberg noted that Plaintiff walked with a mildly antalgic gait; however he did not use a cane or other ambulatory aid. (Tr. 290). The remainder of the physical examination was within normal limits. *Id.* He found that Plaintiff had no difficulty reaching, grasping or handling objects. *Id.* Last, Dr. Swedberg opined that Plaintiff could perform a mild-to-moderate amount of sitting, standing, ambulating, bending, kneeling, pushing, pulling, lifting and carrying heavy objects. *Id.*

On November 8, 2012, state agency consultant Dr. Leon Hughes reviewed the record and provided his opinion on Plaintiff's functional limitations. (Tr. 116-17). He opined that Plaintiff could occasionally lift 20 pounds, frequently lift 10 pounds, and could sit, stand, or walk for six (6) hours in an 8-hour workday. (Tr. 116). He believed that Plaintiff was unlimited in his ability to push or pull, climb ramps/stairs, and balance. Id. He could frequently crawl, stoop, kneel, and crouch, but could never climb ladders/ropes/scaffolds. (Tr. 117). Dr. Hughes believed there were no manipulative, visual, communicative, or environmental limitations. Id.

On March 12, 2013, state agency consultant Dr. Michael Lehv also reviewed the record and provided his opinion. (Tr. 127-28). He opined that Plaintiff could occasionally lift 20 pounds, frequently lift 10 pounds, and could sit for six (6) hours in an eight-hour workday. Id. He believed that Plaintiff could stand or walk for two (2) hours and was limited in pushing/pulling with his right lower extremity. (Tr. 127). He further opined that Plaintiff could frequently balance, stoop, kneel, and crouch. (Tr. 127-28). Dr. Lehv also believed that Plaintiff could occasionally climb ramps/stairs, but could never crawl or climb ladders/ropes/scaffolds. *Id.* Finally, Dr. Lehv opined that Plaintiff did not have manipulative, visual, communicative, or environment limitations. (Tr. 128).

Here in formulating Plaintiff's RFC, the ALJ assigned great weight to the findings of the state agency medical consultants, Drs. Hughes and Lehv, with the exception of Dr. Lehv's finding that Plaintiff could stand/walk for only two (2) hours a day. The ALJ found that the record objective medical evidence as well as substantial evidence in the record did not support this portion of his opinion (Tr. 40). The ALJ found that the state agency consultants' opinions were consistent with the medical record in every other

11

aspect. (Tr. 40). The ALJ gave "some weight" to the findings of Dr. Swedberg's opinion because it was supported by his examination, however the ALJ found that his "mild" and "moderate" findings[1] were vague and not defined within Plaintiff's exertional abilities. (Tr. 40). Last, the ALJ gave limited weight to the opinion of Plaintiff's treating physician, Dr. Desai (Tr. 41-42). Plaintiff asserts that the ALJ erred in failing to give controlling weight to the findings of his treating physician and to the entirety of Dr. Lehv opinion. Upon careful review, the undersigned finds that Plaintiff's contentions are not well-taken.

In evaluating the opinion evidence, "[t]he ALJ 'must' give a treating source opinion controlling weight if the treating source opinion is 'well-supported by medically acceptable clinical and laboratory diagnostic techniques' and is 'not inconsistent with the other substantial evidence in [the] case record.' " *Blakley v. Commissioner of Social Sec.,* 581 F.3d 399, 406 (6th Cir.2009) (quoting *Wilson v. Commissioner,* 378 F.3d 541, 544 (6th Cir.2004). If the ALJ does not accord controlling weight to a treating physician, the ALJ must still determine how much weight is appropriate by considering a number of factors, including the length of the treatment relationship and the frequency of examination, the nature and extent of the treatment relationship, supportability of the opinion, consistency of the opinion with the record as a whole, and any specialization of the treating physician. *Wilson,* 378 F.3d at 544; *see also* 20 C.F.R. § 404.1527(d)(2).

Furthermore, an ALJ must "always give good reasons in [the ALJ's] notice of determination or decision for the weight [the ALJ] give[s] [the claimant's] treating source's opinion." 20 C.F.R. § 404.1527(d)(2); *but see Tilley v. Comm'r of Soc. Sec.,*

---

[1] Dr. Swedberg opined that Plaintiff could perform a mild-to-moderate amount of sitting, standing, ambulating, bending, kneeling, pushing, pulling, lifting and carrying heavy objects. (Tr. 290).

No. 09–6081, 2010 WL 3521928, at *6 (6th Cir.Aug.31, 2010) (indicating that, under *Blakely* and the good reason rule, an ALJ is not required to explicitly address all of the six factors within 20 C.F.R. § 404.1527(d)(2) for weighing medical opinion evidence within the written decision).

Here, with respect to Dr. Desai, the ALJ determined that Dr. Desai's extreme limitations were not consistent with his own treatment notes, were not supported by medical evidence, and not consistent with the clinical and laboratory findings. (Tr. 42). In this regard, the ALJ noted that Dr. Desai's treatment notes reflect routine follow-up care, rather than treatment for back and foot pain. The ALJ found that Dr. Desai's opinion was inconsistent with his course of treatment of Plaintiff. (Tr. 42). Notably, the medical records from Dr. Desai do not reflect treatment of Plaintiff's back or ankle. Other than one treatment note from June 25, 2013, in which Plaintiff was seen for "back pain," the remaining records show that Plaintiff saw Dr. Desai almost monthly for a "check-up" and "meds refilled." (Tr. 280, 281, 322, 362, 363). *See also* Walters v. Comm'r of Soc. Sec., 127 F.3d 525, 530 (6th Cir. 1997) ("[A]ny claim by Dr. Austin that Walters suffered from impairments of disabling severity would not be supported by detailed, clinical, diagnostic evidence in his reports."). Furthermore, the ALJ found that Dr. Desai's opinion was not supported by the objective medical evidence and other substantial evidence in the record that showed only "mild" degenerative disc disease and x-rays of Plaintiff's lumbar spine showed "mild" upper lumbar spondilosis and dextroscoliosis. (Tr. 42). *See Tyra v. Sec'y of HHS*, 896 F.2d 1024, 1030 (6th Cir. 1990) ("Though claimant's physicians consistently reported Tyra's subjective complaints of pain, he had no underlying neurological abnormalities, atrophy or proportionate loss

of sensory and reflex reactions."). In light of the foregoing, the ALJ properly evaluated Dr. Desai's findings in accordance with Agency regulations and controlling law.

For many of the same reasons, the ALJ properly discounted a portion of Dr. Lehv's findings that limited Plaintiff to two hours of standing/walking per day. The ALJ noted that such limitations were not supported by the objective and/or other substantial evidence of record. (Tr. 40). As noted above, the objective medical evidence and other substantial evidence in the record showed only "mild" degenerative disc disease and x-rays of Plaintiff's lumbar spine showed "mild" upper lumbar spondylosis and dextroscoliosis. (Tr. 42).

Moreover, as noted by the Commissioner, Plaintiff fails to cite any other opinion or medical evidence to show that Plaintiff was so limited in his ability to stand or walk. It is well established that the burden is always on Plaintiff to present evidence of her disability. 42 U.S.C. § 423(d)(5)(A) ("An individual shall not be considered to be under a disability unless he furnishes such medical and other evidence of the existence thereof as the Commissioner of Social Security may require."); 20 C .F.R. §§ 404.1512(a), 416.912(a) (stating that "in general, you have to prove to us that you are ... disabled. This means that you must furnish medical and other evidence that we can use to reach conclusions about your medical impairment(s)"). Plaintiff has not met that burden here.

For these reasons, the ALJ's evaluation of the opinion evidence is substantially supported in this regard.

*3. Credibility*

Plaintiff's statement of errors states that the ALJ erred in his credibility assessment. (Doc. 8 at 1). However, Plaintiff provides no evidence or argument to

14

support his claim throughout the remainder of his brief. Notably, it is not the Court's function to comb through the entire record to develop an argument on Plaintiff's behalf. See *Gray v. Astrue,* 4:09–CV– 01468, 2010 WL 2106200 (N.D.Ohio Mar.31, 2010) report and recommendation adopted sub nom. *Gray v. Comm'r of Soc. Sec.,* 4:09CV1468, 2010 WL 2106196 (N.D.Ohio May 25, 2010) (citing *McPherson v. Kelsey,* 125 F.3d 989, 995–96 (6th Cir.1997) ('[I]ssues adverted to in a perfunctory manner, unaccompanied by some effort at developed argumentation, are deemed waived. It is not sufficient for a party to mention a possible argument in the most skeletal way, leaving the court to put flesh on its bones.')). *See also Hollon v. Comm'r of Soc. Sec.,* 447 F.3d 477, 490 (6th Cir.2006) ('This challenge warrants little discussion, as [plaintiff] has made little effort to develop this argument in her brief on appeal....').

In any event, upon careful review, the undersigned finds that the ALJ properly considered the requisite factors in making his credibility determination. The ALJ's credibility determination considered Plaintiff's subjective statements as to his symptoms and functional limitations, objective medical evidence; Plaintiff's activities of daily living; and the record medical opinions. (Tr. 42-43). Further, the ALJ explained, in detail, the inconsistencies between Plaintiff's subjective allegations and the record evidence. *Id.*

Based on the foregoing, the undersigned finds that the ALJ's decision adequately sets forth the reasons for his credibility finding and shows he considered the required factors in determining plaintiff's credibility. See 20 C.F.R. § 416.929(c). In light of the ALJ's opportunity to observe plaintiff's demeanor, the ALJ's credibility finding is entitled to deference and should not be discarded lightly. *Kirk v. HHS,* 667 F.2d 524, 538 (6th Cir. 1981). *See also Cruse v. Commissioner,* 502 F.3d 532, 542 (6th Cir.2007); *Walters*

*v. Commissioner,* 127 F.3d 525, 531 (6th Cir.1997); *Gaffney v. Bowen,* 825 F.2d 98, 101 (6th Cir.1987). Accordingly, the Court finds substantial evidence supports the ALJ's credibility finding in this matter.

### III. Conclusion and Recommendation

For the reasons explained herein, **IT IS RECOMMENDED THAT** Defendant's decision be found to be **SUPPORTED BY SUBSTANTIAL EVIDENCE**, and **AFFIRMED**, and that this case be **CLOSED.**

    *s/Stephanie K. Bowman*
Stephanie K. Bowman
United States Magistrate Judge

**UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF OHIO
WESTERN DIVISION**

DONALD LYNCH,                                        Case No. 1:15-cv-793

        Plaintiff,                                 Barrett, J.
                                                                 Bowman, M.J.

     v.

COMMISSIONER OF SOCIAL SECURITY,

        Defendant.

**NOTICE**

Pursuant to Fed. R. Civ. P. 72(b), any party may serve and file specific, written objections to this Report & Recommendation ("R&R") within **FOURTEEN (14) DAYS** of the filing date of this R&R. That period may be extended further by the Court on timely motion by either side for an extension of time. All objections shall specify the portion(s) of the R&R objected to, and shall be accompanied by a memorandum of law in support of the objections. A party shall respond to an opponent's objections within **FOURTEEN (14) DAYS** after being served with a copy of those objections. Failure to make objections in accordance with this procedure may forfeit rights on appeal. *See Thomas v. Arn,* 474 U.S. 140 (1985); *United States v. Walters,* 638 F.2d 947 (6th Cir. 1981).